[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint returnable to the court on July 25, 2000, the Plaintiff wife, Trudy Mulligan, commenced this action, seeking a dissolution of the marriage on the grounds of irretrievable breakdown, alimony, property distribution, and other relief. The parties appeared at trial with counsel commencing on October 4, 2001 and diverse days thereafter and presented oral testimony and exhibits.
Post trial filings included proposed findings of fact, conclusions of law and proposed orders. The court after hearing and reviewing the evidence finds the following facts.
The wife whose maiden name was Weeks mated the defendant husband on July 11, 1970 at Binghamton, New York. One of the parties to this marriage has resided continuously in this state more than one year before the filing of the complaint. All statutory stays have expired and this court has jurisdiction. The parties have no minor children issue of this marriage and further no minor child has been born to the wife since the date of the marriage.
The Court further finds that no state or municipal agency is contributing to the support of the parties.
The wife is 53 years old, attended college and was teaching French when the parties married. She has suffered from tempo mandibular joint syndrome, chronic fatigue syndrome and has food allergies, which require a special diet. She is treated by a physician in New York and is on a regimen of medications and supplements.
For the first dozen or so years of marriage, the parties devoted their energy to the husband's schooling, from college to graduate school culminating in the husband attaining a Ph.D. degree. The parties subsisted on the wife's full time earnings as well as the scholarships and stipends received and earned by the husband. The wife stopped working full time when their daughter, Molly, was born in 1975. Following the birth of the child, the wife left full-time employment and the family was supported in part by general assistance.
During the course of the marriage the family moved numerous times. The relocations were caused by the defendant husband's employment opportunities. The defendant provided the bulk of the income during the CT Page 15388 marriage.
Almost from the outset of the marriage, the defendant frequented locations where he could engage in nude sunbathing. The plaintiff accompanied the defendant very infrequently. However, she was clearly aware that her husband was a "naturalist" or "nudist". During the course of the marriage, the husband spent considerable amount of time away from his wife and daughter engaging in this interest. The defendant was secretive as to the extent of his "interest" and this is evidenced by the defendant's obtaining a post office box in Westerly, Rhode Island where he received a naturalist magazine as well as "amateur" adult videos. The plaintiff occasionally shared in the husband's interest in "adult videos".
In 1997 the family purchased a Gateway computer and a compatible camera that allowed images to be posted on the internet. The defendant's withdrawal from his wife began to accelerate. The defendant dedicated hours each day to indulging exhibitionist and voyeuristic behaviors via the internet. Although the court declines to quantify the fault to be assigned to each of the parties, the Court does feel that the defendant's emotional and physical withdrawal from the plaintiff was a factor in the breakdown of the marriage.
In 1999, the plaintiff's mother and father both passed away. The plaintiff had an extremely close relationship with her parents who supported the parties emotionally as well as financially during the course of the marriage. The Defendant enjoyed a close relationship with his in-laws as well. The plaintiff received assets worth over $350,000.00 from the estates of her parents. Receipt of these funds, while not a factor causing the breakdown of the marriage (inasmuch as the marriage had already broken down) did lead to the institution of the present action.
The Court finds that the allegations set forth in the complaint are proven true. Judgment shall enter dissolving the marriage of the parties on the ground of irretrievable breakdown.
The Court, in entering its other orders, considers the provisions of Connecticut General Statute §§ 46b-40, 46b-66a, 46b-81, 46b-82 and other statutes relevant to the issue presented.
The Court enters the following orders.
The marriage is dissolved on the grounds of irreconcilable breakdown.
1. The defendant shall pay the plaintiff $250.00 per week for a CT Page 15389 duration not to exceed ten years from the date of decree or until the plaintiff's remarriage, cohabitation under the statute or death. Alimony payments shall cease on the defendant's death. The alimony order is based on the husband's gross earnings of $87,000.00, the wife's gross earnings of $21,000.00, as well as income which may be produced by virtue of the property awards to follow.
2. The husband shall maintain his $160,000.00 life insurance policy he now maintains through Electric Boat with a death benefit of $160,000.00 during the term of alimony with the wife as the sole irrevocable beneficiary thereon. The husband shall provide to the wife an authorization allowing her to secure information about the maintenance of the policy for her benefit.
3. The plaintiff shall quitclaim all her current and future ownership, interest and rights in 172 Dartmouth Drive, Mystic, Connecticut to the defendant within 30 days of the date of the decree. All liens filed against the property by the plaintiff shall be removed within 30 days of the date of the decree. The plaintiff shall be removed from the mortgage within 180 days of the date of decree.
4. The defendant shall forego any and all interest in the plaintiff's real property at 539 Davis Avenue, Endicott, New York, as well as the cottage at Oak Cliff Road, Watkins Glen, New York. Each party shall be solely responsible for and hold the other harmless from all costs of use or ownership of their respective real estate.
5. The husband shall retain the joint stocks.
6. The wife shall be named as alternate payee for 50% of the market value of the husband's General Dynamics and HKS401 plans for 50% of the value in the plans as of the date of the decree. She shall receive all investment performance on the funds from the date of the decree to the date of rollover/distribution to her. The Court shall reserve jurisdictions until the Qualified Domestic Relations Orders are drafted, approved, qualified and certified. Until such time as the QDRO is implemented by the plan administrator, the husband shall continue to name the wife as his surviving beneficiary for his interest in the plan. The husband shall retain 100% ownership in his General Dynamics' pension plan, free and clear of any and all claims by the plaintiff wife.
7. The defendant shall transfer ownership in the 1995 Acura Integra to the plaintiff within 60 days of the date of the decree, free and clear of any and all liens. The defendant shall retain all ownership, interest and responsibility for the defendant's 1996 Toyota Rave 4. CT Page 15390
8. The plaintiff shall forego all current and future interest or rights to assets held in bank accounts, other accounts or cash by the defendant. The defendant shall forego all current and future interest or rights to assets held in bank accounts, other accounts or cash by the plaintiff
9. The parties shall be solely responsible to debts listed on their respective financial affidavits. Any debt not listed but incurred on or after June 15, 2000 by the defendant shall be assumed, by the defendant. Any debt not listed but incurred by the plaintiff on or after June 15, 2000 shall be assumed by the plaintiff.
10. The plaintiff shall retain all the furnishings and furniture and effects in her possession with the exception of a pine wooden end table made by the defendant and the Quimper Faience place settings which shall be transferred to the defendant from the plaintiff's properties in New York. The husband shall retain all the furnishings and furniture and effects in his possession excepting that he shall transfer the plaintiff's mother's sheet music and the plaintiff father's soapstone carving to the plaintiff.
11. Until such time as the wife becomes eligible for health insurance coverage through her new employment, she shall be eligible for COBRA health insurance coverage through her husband's employment, at her own expense.
12. The defendant and plaintiff shall be responsible for their own lawyer's costs and other fees associated with this decree.
13. Monies from the defendant's and plaintiff's 1999 federal and Connecticut state tax returns shall be transferred to the defendant by signing the 1999 tax return checks held by the defendant on the date of the decree. The cost of preparation for the 1999 tax return shall be fully assumed by the defendant.
Dubay, J.